**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**CIVIL ACTION NO. 5:25-CV-00095-SCR-MTO**

| | | |
|---|---|---|
| **SCOTTY SHOOK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**THIS MATTER** is before the Court on "Plaintiff's Brief" (Doc. No. 4), "Defendant's Brief" (Doc. No. 6), and Plaintiff's Reply (Doc. No. 7).[1] This case was reassigned to the undersigned on December 26, 2025.

The Court finds that Defendant's decision to deny Plaintiff Social Security benefits is supported by substantial evidence. Accordingly, the Court will affirm the Commissioner's decision.

## I. PROCEDURAL HISTORY

The Court adopts the procedural history as stated in the parties' briefs and discusses relevant portions below.

Plaintiff filed the present action on June 24, 2025. He assigns error to the Administrative Law Judge's ("ALJ") formulation of his physical Residual Functional Capacity ("RFC"),[2] arguing

[1] Following amendments to the Supplemental Rules for Social Security Actions, see 42 U.S.C. § 405(g), and to Local Civil Rule 7.2, the parties are no longer required to file dispositive motions.

[2] The Social Security Regulations define "Residual Functional Capacity" as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] [R]esidual [F]unctional [C]apacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b). The agency's regulations establish a five-step sequential evaluation, by which the Commissioner considers, in sequence, whether a claimant: (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the severity of a listed

that the ALJ erred in the formulation and application of the Plaintiff's RFC. (Doc. No. 4 at 8–23; Doc. No. 7 at 1–4). Specifically, Plaintiff argues that the ALJ erred "by failing to conduct a proper consistency analysis of [non-examining state agency expert] Dr. [Ki] Abel's opinion." (Doc. No. 4 at 9). Dr. Abel opined that the Plaintiff could perform light work, occasionally climb ramps/stairs, never climb ladders/ropes/scaffolds, frequently stoop, kneel, crouch, and crawl, and avoid concentrated exposure to extreme cold. (Tr. 105–06). The ALJ found Dr. Abel's opinion persuasive and developed a RFC applying the majority of that opinion as discussed below. (Tr. 37).

Plaintiff also argues that the ALJ erred "by failing to build an accurate and logical bridge between the Plaintiff's testimony and [RFC]," (Doc. No. 4 at 16–22; Doc. No. 7 at 4–7), that is, the ALJ did not sufficiently account for Plaintiff's subjective complaints of fatigue. (Doc. No. 4 at 16).

The ALJ found that Plaintiff had the following severe impairments: "obesity, history of myocardial infarction, hypertension, coronary artery disease, diabetes, and lumbar degenerative disc disease (20 CFR 404.1520(c))." (Tr. 32). As to the RFC for Plaintiff, the ALJ wrote:

> **After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he should never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs. He can frequently stoop, kneel, crouch, and crawl. He should avoid a concentrated exposure to extreme heat.**

(Tr. 35) (bolding in original).[3] Based on this RFC, the ALJ then found that Plaintiff was unable to perform any of his past relevant work. (Tr. 37). Based on the RFC and the testimony of a

---

impairment, (4) can return to his past relevant work, and (5) if not, whether he can perform other work. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Between steps three and four, the claimant's residual functional capacity is evaluated. 20 C.F.R. § 404.1545(a)(1).

[3] As discussed above, Plaintiff challenges only the RFC as to his physical limitations, not mental limitations. Any challenges not set forth in Plaintiff's opening brief are waived. Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307,

Vocational Expert, the ALJ then found that Plaintiff was capable of performing several jobs that exist in significant numbers in the national economy and, therefore, was not disabled. (Tr. 38).

## II. DISCUSSION

The Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); Biestek v. Berryhill, 587 U.S. 97, 102–03 (2019); Oakes v. Kijakazi, 70 F.4th 207, 212 (4th Cir. 2023); Arakas v. Comm'r of Soc. Sec., 983 F.3d 83, 94 (4th Cir. 2020). "Substantial evidence is 'more than a mere scintilla' and '[i]t means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Oakes, 70 F.4th at 212 (quoting Biestek, 587 U.S. at 103). "The threshold is 'not high' and defers to the ALJ, 'who has seen the hearing up close.'" Id. (quoting Biestek, 587 U.S. at 103, 108). "In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for the ALJ's." Id. (quoting Arakas, 983 F.3d at 95). "But 'even under this deferential standard, we do not reflexively rubber-stamp an ALJ's findings.'" Id. (quoting Lewis v. Berryhill, 858 F.3d 858, 870 (4th Cir. 2017)).

"To pass muster, ALJs must build an accurate and logical bridge from the evidence to their conclusions." Id.; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (finding the ALJ failed to build an accurate and logical bridge from the evidence to his conclusion); Patterson v. Comm'r of Soc. Sec., 846 F.3d 656, 663 (4th Cir. 2017). In Patterson, the Court explained:

> We do not take a position on the merits of [Plaintiff's] application for disability benefits. Instead, the dispute here arises from a problem that has become all too common among administrative decisions challenged in this court—a problem decision makers could avoid by following the admonition they have no doubt heard

316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue.") (internal quotation omitted and brackets removed).

> since their grade-school math classes: Show your work. The ALJ did not do so here, and this error rendered his decision unreviewable.

846 F.3d at 663 (citing Kohler v. Astrue, 546 F.3d 260, 267 (2d Cir. 2008)).

The question before the ALJ was whether Plaintiff became disabled at any time.[4] The ALJ is responsible for assessing a claimant's RFC. See 20 C.F.R. §§ 404.1546(c), 416.946(c). In making that assessment, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments. See Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ also must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts. . . and nonmedical evidence[.]" Id. at *7.

SSR 96-8p explicitly directs:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

Id. at *5.

Plaintiff has the burden of establishing his RFC by showing how his impairments affect his functioning. See 20 C.F.R. §§ 404.1512(a), 416.912(a); see also, e.g., Plummer v. Astrue, No. 5:11-cv-06-RLV-DSC, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) ("The claimant bears the burden of providing evidence establishing the degree to which her impairments limit her

[4] The term "disability" is defined as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . [.]

42 U.S.C. § 423(d)(1)(A); see also Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

RFC[.]"), Mem. & R. adopted, 2012 WL 1858844 (May 22, 2012), aff'd, 487 F. App'x 795 (4th Cir. 2012).

In Mascio, the Fourth Circuit observed "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)); see also Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019) ("ALJ's analysis of [plaintiff's] RFC contains too little logical explanation for us to conduct meaningful appellate review.").

Here, the ALJ thoroughly discussed the record. (Tr. 29–39). Substantial evidence supports the ALJ's finding that despite Plaintiff's impairments, he remained capable of light work with additional limitations of never climbing ladders, ropes, or scaffolds; no more than occasionally climbing ramps and stairs, no more than frequent stooping, kneeling, crouching, and crawling; and avoiding concentrated exposure to extreme heat. (Tr. 35). The ALJ's decision explained why those limitations accounted for Plaintiff's difficulties associated with his impairments and is supported by substantial evidence. (Tr. 35–37).

Initially, Plaintiff challenges the ALJ's evaluation of Dr. Abel's opinion. Because Plaintiff filed his disability claim after March 27, 2017, the ALJ was tasked with evaluating how persuasive the medical opinions were by considering factors (supportability, consistency, relationship with the claimant, specialization, and a catch-all "other"), and explaining how she considered the most important factors of "supportability" and "consistency." 20 C.F.R. § 416.920c(a). "[S]upportability" refers to how well the medical source supported the opinions with explanation and objective medical evidence, and "consistency" to how consistent the opinions are with

evidence from other medical sources and nonmedical sources. 20 C.F.R. § 416.920c(c)(1)-(2).

The ALJ's consideration of the medical opinions and prior administrative medical findings was an important, but not the only, aspect of the ALJ's RFC determination. 20 C.F.R. § 404.1545(a)(1), (3) (explaining that the ALJ assesses the RFC based on all the evidence of record, not just the opinion evidence). In the detailed RFC finding, the ALJ considered Plaintiff's allegations, including the claims from his representative's brief that he was limited to sedentary work because he was not able to walk, sit, or stand for any length of time without fatigue, as well as his testimony that he could walk up to ten minutes, stand up to ten minutes, sit for only 30 minutes at a time, and struggled to lift more than ten pounds. (Tr. 35; Tr. 50–69, 226–33, 287–91).

The ALJ appropriately contrasted these allegations with the medical evidence. Regarding cardiovascular issues, the ALJ explained "the record shows limited cardiac exacerbations and limited motor deficits shown at testing." (Tr. 35). For example, the ALJ noted that Plaintiff's testing was normal in November 2019, had no edema or cardiac abnormalities in July 2020, had an ejection fraction of 50% with no decompensated cardiovascular symptoms in November 2020, and despite fatigue complaints had normal testing in July 2021 and again in August 2022. (Tr. 35–36; see, e.g., Tr. 315, 317, 321–22, 329, 376–77, 444). The ALJ discussed Plaintiff's hospitalization and subsequent diagnosis for diabetes mellitus in October 2019, noting that consistently throughout the remaining period Plaintiff had generally controlled blood sugars and displayed no neurological deficits and had normal physical examinations throughout the relevant period. (Tr. 35–36; see, e.g., Tr. 305–06, 321–22, 376–77, 681).

Additionally, the ALJ considered Plaintiff's consultative examination in October 2022. The ALJ noted that at this appointment Plaintiff met the criteria for obesity, and that she considered that in rendering her RFC finding. (Tr. 36; Tr. 393). The ALJ also considered that

Plaintiff displayed high blood pressure, noting that he did not display symptoms related to blood pressure at the examination. (Tr. 36; Tr. 393–95). Otherwise, the ALJ explained that during this examination Plaintiff displayed no issues with strength or ambulation, and an x-ray of his lumbar spine reflected moderate spondylosis. (Tr. 36; Tr. 393–95, 400).

The ALJ then explained how this evidence did not support Plaintiff's allegations, finding that his subjective statements were "not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 36). The ALJ first noted Plaintiff's work history, explaining that he worked until 2018 and did not stop working due to his impairments, but rather because his employer went out of business. (Tr. 36; Tr. 52). Further, the ALJ explained that despite his allegations of symptoms related to cardiovascular issues and diabetes mellitus, his A1c levels were stable, and he did not have significant cardiovascular exacerbations. (Tr. 36). As for his alleged back pain, the ALJ explained that Plaintiff's treatment was minimal with no evidence of physical therapy, injections, or surgery. (Id.). The ALJ also found his allegations overall inconsistent with his ability to perform at least some daily activities, including preparing his own meals, doing housework slowly, watching television, shopping, and going to church. (Tr. 36; Tr. 226–32).

Finally, after her discussion of Plaintiff's subjective complaints, medical records, work history, and daily activities, the ALJ addressed the prior administrative medical finding and other opinions. (Tr. 36–37). The ALJ found unpersuasive the initial prior administrative medical finding from Kevin Roane, M.D., who found insufficient evidence to make a determination, noting that the updated evidence provided enough information to render an assessment of Plaintiff's functioning. (Tr. 36; Tr. 97–98). The ALJ also found somewhat persuasive the opinion of Aregai A. Girmay, M.D., a consultative examiner, who opined that Plaintiff had an impairment rating of moderate and could walk 100 feet without difficulty, explaining that the

opinion was limited and not a full assessment of Plaintiff's abilities. (Tr. 37; Tr. 395).

By contrast, the ALJ found persuasive the opinion of State agency medical consultant Dr. Abel, using his prior administrative medical finding as a cornerstone of her RFC finding. (Tr. 37). Dr. Abel found that Plaintiff could perform light work except he could occasionally climb ramps/stairs; never climb ladders/ropes/scaffolds; frequently stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to extreme cold. (Tr. 37; 105–06). The ALJ found this prior administrative medical finding persuasive, explaining that it was supported by the records reviewed that showed no issues with ambulation or strength, as well as consistent with the longitudinal record that consistently reflected that his A1c was normal and controlled. (Tr. 37). Thus, the ALJ mostly adopted Dr. Abel's conclusions in her RFC finding, changing only Dr. Abel's recommendation of avoiding extreme heat to extreme cold, a point Plaintiff does not challenge. (Id.).

Plaintiff takes issue with the ALJ's evaluation of Dr. Abel's prior administrative medical finding, contending that her evaluation of the "consistency" factor was insufficient. (Doc. No. 4 at 9–15). More specifically, he argues that the ALJ erred by not explaining how Dr. Abel's prior administrative medical finding was consistent with the findings of Dr. Girmay's October 2022 consultative examination of slightly abnormal range of motion in his thoracolumbar spine, his high blood pressure, and his history of myocardial infarction and coronary artery disease that was described as New York Heart Association (NYHA) class II. (Id. at 12–13).

As a threshold matter, all the evidence Plaintiff purports was "inconsistent" with Dr. Abel's prior administrative medical finding was included within Dr. Abel's supporting explanation of her assessed limitations. As Dr. Abel explained, "[consultative examination] evidence showed [blood pressure] 171/106," Plaintiff had "abnormal [range of motion] in his [thoracolumbar spine], and

Plaintiff had "NYHA Class II symptoms with no evidence of worsening in [symptoms]"—the very evidence Plaintiff cites and alleges was "inconsistent" with her conclusions. (Tr. 106–107; Doc. No. 4 at 12–13). Dr. Abel evaluated this evidence with the other evidence of record, explaining that "[p]erformance of the proposed RFC with its limitations can be completed based off function and evidence received." (Tr. 107). The ALJ then referenced Dr. Abel's corresponding explanation in evaluating the "supportability" factor under the regulations, ultimately finding it persuasive and reaching substantially the same conclusion as Dr. Abel. (Tr. 37). Rather than ignore them, or reach an inconsistent conclusion, the ALJ correctly found that Dr. Abel relied upon that examination to support her conclusion that Plaintiff could perform a range of light work.

Further, the ALJ's conclusion that Plaintiff's controlled blood sugars were consistent with the findings she assessed is accurate and a reasonable interpretation of the record. Indeed, the fact that Plaintiff's diabetes—one of the main impairments Plaintiff purports restricted his ability to perform work—was consistently unremarkable during the relevant period is fully consistent with Dr. Abel's conclusion that Plaintiff could perform light work in the national economy. (Tr. 37). Nothing more was required. See Warnell v. O'Malley, 97 F.4th 1050, 1053 (7th Cir. 2024) ("[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements. An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning.").

Furthermore, despite Plaintiff's belief that further discussion of certain evidence should have been performed, the ALJ's evaluation of the opinion evidence is not to be read in a vacuum separate from the remainder of the decision, but rather a reviewing Court "must read the ALJ's decision as a whole." Keene v. Berryhill, 732 F. App'x 174, 177 (4th Cir. 2018); Wilkins v. Sec'y,

Dep't of Health & Hum. Servs., 953 F.2d 93, 96 (4th Cir. 1991) (courts should "view the ALJ's decision as a whole rather than to conduct a piecemeal assessment of specific sentences."); see also Zaborowski v. Comm'r of Soc. Sec., 115 F.4th 637, 639 (3d Cir. 2024) (the ALJ "need not reiterate the magic words 'support' and 'consistent' for each doctor," and may "weave [discussion of] supportability and consistency throughout [his] analysis of which doctors were [more] persuasive."). Indeed here, as discussed at length above, the ALJ discussed the very evidence Plaintiff purports was ignored in her RFC finding. (Tr. 35–36). The ALJ noted Plaintiff's history of myocardial infarction explaining that the record reflected no further exacerbations during the relevant period. (Id.). The ALJ discussed Plaintiff's blood pressure, noting that it did not present in any significant issues in the examination. (Tr. 36). Finally, the ALJ discussed Plaintiff's alleged thoracolumbar spine issues, acknowledging Plaintiff's moderate spondylosis and noting that Plaintiff underwent minimal treatment for any musculoskeletal issues. (Id.). Plaintiff's contention that the ALJ erred by not repeating this same analysis a second time in discussing the consistency of the prior administrative medical findings should be rejected. See McCartney v. Apfel, 28 F. App'x 277, 279–80 (4th Cir. 2002) (rejecting challenge to ALJ's finding for lack of sufficient detail where other discussion in decision adequately supported finding and stating "that the ALJ need only review medical evidence once in his decision").

And finally, despite having the burden to establish disability, Plaintiff provided no medical opinion that established greater limitations than found by the ALJ. (Doc. No. 4 at 9–15). Indeed, the burden is on Plaintiff "to prove the extent of his functional limitations; it is not the ALJ's burden to prove a lack of limitations." Hendrickson v. Berryhill, No. 116-cv-00367-MOC-DLH, 2018 WL 1431751, at *7 (W.D.N.C. Mar. 22, 2018) (citing Radford v. Colvin, 734 F.3d 288, 291 (4th

Cir. 2013)).[5]

In sum, the ALJ sufficiently explained her rationale for finding Dr. Abel's opinion persuasive, and Plaintiff puts forth no evidence that was not considered by the ALJ, much less a medical opinion establishing greater limitations than the ALJ found. Although Plaintiff may disagree with persuasiveness afforded to this opinion, that does not mean that the ALJ's decision was erroneous or that Plaintiff can ask this Court to reweigh the evidence to arrive at a different conclusion. See, e.g., Estep v. Richardson, 459 F.2d 1015, 1017 (4th Cir. 1972) ("the [ALJ's] decision, if supported by substantial evidence, must be affirmed even though the reviewing court believes that substantial evidence also supports a contrary result"); Drumgold v. Comm'r of Soc. Sec., 144 F.4th 596, 604 (4th Cir. 2025) ("We're only looking to make sure that *something* more than a mere scintilla supports the decision, because we understand that ALJs are the front-line decisionmakers who are best positioned to decide which pieces of evidence are persuasive and which pieces of evidence are not.") (internal quotation marks and citation omitted, emphasis in original).

Finally, the ALJ properly evaluated Plaintiff's subjective complaints in the context of all the available evidence, including his complaints of fatigue. When assessing a disability claim, an ALJ considers the claimant's alleged symptoms and assesses the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 416.929(a). The regulations set out two steps for this analysis. The ALJ first assesses whether there is objective medical evidence showing the existence of a medical impairment which

[5] This distinguishes it from the case Plaintiff cites in support of his argument—Ikard v. Comm'r of Soc. Sec. Admin.—which involved an opinion that reflected *greater* limitations than found by the ALJ that was vaguely found "not supported by her own treatment records and [was] not consistent with the preponderance of the objective medical records," which this Court found required greater explanation. No. 5:21-CV-00125-MR-WCM, 2022 WL 4459867 at *2–3 (W.D.N.C. Aug. 30, 2022), R.&R. adopted sub nom. Ikard v. Kijakazi, 2022 WL 4454386 (W.D.N.C. Sept. 22, 2022).

could reasonably be expected to produce the symptoms alleged. Id.; Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); SSR 16-3p, 2016 WL 1119029, at *2 (S.S.A. Mar. 16, 2016). If there is, the ALJ then evaluates the intensity and persistence of the claimant's symptoms to determine their limiting effects. 20 C.F.R. § 416.929(a), (c). The ALJ does so by considering "all of the available evidence, including [the] medical history, the medical signs and laboratory findings, and [the claimant's] statements," assessing the extent to which the claimant's alleged functional limitations "can reasonably be accepted as consistent with" that evidence. 20 C.F.R. § 416.929(a). The ALJ also evaluates the claimant's "statements in relation to the objective medical evidence and other evidence," considering "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the] statements and the rest of the evidence." 20 C.F.R. § 416.929(c)(4). The claimant's alleged symptoms "need not be accepted to the extent they are inconsistent with the available evidence." Craig, 76 F.3d at 595.

The ALJ thoroughly discussed Plaintiff's reports and testimony of symptoms resulting from fatigue. The ALJ properly applied the two-step analysis and relied on the regulatory factors in 20 C.F.R. § 404.1529 relevant to the evidentiary determination of the nature, intensity, frequency, or severity of Plaintiff's alleged fatigue. Specifically, the ALJ considered statements from Plaintiff's representative that Plaintiff was limited to only sedentary work due to fatigue and Plaintiff's testimony at his hearing that he could stand and walk for only ten minutes before needing to rest. (Tr. 35). However, as discussed in detail above, after a thorough review of the record evidence, the ALJ found these allegations not fully consistent with the record evidence. (Tr. 35–37). The ALJ explained that Plaintiff's work history was inconsistent with his allegations of debilitating symptoms, noting that he stopped working due to his work closing and not because of any of his impairments. (Tr. 36). Further, the ALJ explained that despite Plaintiff's allegations,

his diabetes mellitus was consistently controlled, reflecting stable A1c levels in the normal range. (Tr. 36). And finally, the ALJ explained that the significant limitations alleged by Plaintiff—which again, included being unable to stand for longer than ten minutes—were inconsistent with reports of him being able to perform such tasks like preparing simple meals, housework, shopping, and going to church. (Id.). All these factors indicate that Plaintiff's allegations regarding the extent of his symptoms were not fully consistent with the record, and were factors the ALJ was entitled to consider when evaluating Plaintiff's subjective allegations and claims of fatigue.

Plaintiff argues that based on his own statements of fatigue, the ALJ was required to "include additional RFC limitations such as additional breaks, time off task, increased absenteeism, or any other limitation related to [his] ability to concentrate, persist, or maintain pace." (Doc. No. 4 at 20). Plaintiff identifies no medical source, treatment modality, or even a mention in a doctor's note that would indicate such significant limitations were warranted. Despite Plaintiff's claims that "the ALJ did not offer a reason why Plaintiff's testimony and statements in the Adult Function Report about his fatigue were not credible" (Doc. No. 4 at 20), the ALJ explained that Plaintiff's work history, lack of medical support, and daily activities undermined his subjective allegations. (Tr. 35–37). Furthermore, Plaintiff's argument once again mistakes the burden of proof applicable to his claim. As explained above, the ALJ is not required to disprove Plaintiff's statements regarding his impairments, but instead the burden is on Plaintiff "to prove the extent of his functional limitations." Hendrickson, 2018 WL 1431751, at *7; see also Baker v. Colvin, No. 3:13-CV-20376, 2015 WL 5687544, at *8 (S.D.W. Va. Sept. 8, 2015), report and recommendation adopted, 2015 WL 5698511 (S.D.W. Va. Sept. 28, 2015) (affirming where the claimant "failed to carry her burden to prove that she had functional limitations affecting her ability to work

beyond those included in the RFC assessment by the ALJ.").

When, as here, the basis for the Residual Functional Capacity finding is reasonably discernible, there is no error. Sizemore v. Berryhill, 878 F.3d 72, 80–81 (4th Cir. 2017). Ultimately, Plaintiff disagrees with how the ALJ weighed this evidence, but weighing conflicting evidence is quintessentially the province of the ALJ, not a reviewing court. See also Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ].") (citing Craig, 76 F.3d at 589); Shelley C. v. Comm'r of Soc. Sec. Admin., 61 F.4th 341, 353 (4th Cir. 2023).

The ALJ applied the correct legal standards. Substantial evidence supports the formulation of Plaintiff's RFC and ultimate conclusion that Plaintiff could perform work in the national economy and, therefore, was not disabled.[6]

## III. ORDER

**IT IS, THEREFORE, ORDERED** that the Commissioner's decision is **AFFIRMED**.

The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED**.

Signed: September 30, 2026



Susan C. Rodriguez
United States District Judge



[6] The Court observes that there are some clerical errors in the ALJ's opinion, (Tr. 35), but the Court concludes those are non-material and does not impact the conclusion.